Argued February 10, reargued July 23, affirmed December 29, 1982

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# DOUGLAS RONALD MAI,
*Petitioner on Review.*

## (CA 19767, SC 28146)

656 P2d 315

Merrill Schneider, Sandy, argued and reargued the cause and filed the brief for petitioner on review.

Stephen F. Peifer, Assistant Attorney General, Salem, argued and reargued the cause for respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Lent, Chief Justice, and Linde, Peterson, Tanzer, Campbell, and Carson, Justices.

PETERSON, J.

Lent, C. J., dissenting opinion.

**PETERSON, J.**

This case involves the question whether a law which permits a trial judge to prohibit a witness from testifying because the defense failed to disclose the name of the witness prior to trial violates the defendant's right to compulsory process under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the federal constitution. We hold that it does not.

ORS 135.805-.873 are comprehensive statutes which provide for reciprocal discovery by the prosecution and the defense. The statutes require, *inter alia,* the disclosure of the names and addresses of witnesses the party intends to call at trial. ORS 135.865 provides that the trial court, "[u]pon being apprised of any breach of the duty [of disclosure] * * * may * * * refuse to permit the witness to testify * * *."

The defendant was arrested, charged and convicted of driving under the influence of intoxicants (ORS 487.540) and evading a police officer (ORS 487.555). The defendant's attorney refused to comply with the statutes, claiming that his client had an absolute right to call witnesses, a right guaranteed by the compulsory process clause of the state and federal constitutions. The trial court imposed a sanction permitted by ORS 135.865[1] and refused to permit the witness to testify. After conviction, the defendant appealed to the Court of Appeals, which affirmed. 54 Or App 334, 634 P2d 1367 (1981). We affirm.

SCOPE OF THE RIGHT OF COMPULSORY PROCESS

The Oregon compulsory process clause is found in Article I, section 11, of the Oregon Constitution and provides in part: "In all criminal prosecutions, the accused shall have the right * * * to have compulsory process for obtaining witnesses in his favor * * *." In *State ex rel Gladden v. Lonergan,* 201 Or 163, 269 P2d 491 (1954), we

---

[1] ORS 135.865 provides:

"Upon being apprised of any breach of the duty imposed by the provisions of ORS 135.805 to 135.873, the court may order the violating party to permit inspection of the material, or grant a continuance, or refuse to permit the witness to testify, or refuse to receive in evidence the material not disclosed, or enter such other order as it considers appropriate."

noted the literal meaning of the compulsory process clause and held that the provision secures to the defendant the right to process to obtain the attendance of witnesses, saying:

"Under Art 1, § 11, Oregon Const., the accused not only is guaranteed the right 'to meet the witnesses face to face', but also the right of having 'compulsory process for obtaining witnesses in his favor'.

"At common law an accused charged with a felony could not demand as a matter of right compulsory process for his witnesses, but it was the duty of the prosecution to call and examine all persons who had knowledge of material facts connected with the crime, whether favorable or unfavorable to the defendant. But under the federal constitution and the constitutions of most states, the right of compulsory process for witnesses on behalf of defendant is secured. The right is not subject to the discretion of the court; it is usually absolute, at least as to process for necessary and material witnesses, even though the persons needed as witnesses live outside the county of the venue. * * *" 201 Or at 188.

*See* Clinton, *The Right To Present a Defense: An Emergent Constitutional Guarantee in Criminal Trials,* 9 Ind L Rev 711 (1976), and Westen, *The Compulsory Process Clause,* 73 Mich L Rev 71 (1973), for a detailed summary of the history of the compulsory process clause. *Compare* the concurring opinion of Lent, J., in *State v. Douglas,* 292 Or 516, 520-538, 641 P2d 561 (1982).

■ The right to subpoena a witness into the courtroom is an empty right absent the related right to obtain the testimony of the witness. We have no hesitation in concluding that the clause protects both the right to the attendance of the witness and the testimony of the witness. In this respect, we construe the state compulsory process clause in the same way as the Supreme Court construed the virtually identical federal counterpart in *Washington v. Texas,* 388 US 14, 87 S Ct 1920, 18 L Ed 2d 1019 (1967).[2] In that case, after first holding that the federal compulsory process

---

[2] The Sixth Amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right * * * to have compulsory process for obtaining witnesses in his favor * * *."

clause "is so fundamental and essential to a fair trial that it is incorporated in the Due Process Clause of the Fourteenth Amendment," 388 US at 17-18, the court stated the issue as follows:

> "* * * We are thus called upon to decide whether the Sixth Amendment guarantees a defendant the right under any circumstances to put his witnesses on the stand, as well as the right to compel their attendance in court. * * *" 388 US at 19.

Observing that the compulsory process clause was enacted to overcome the early common law rule prohibiting a defendant from calling witnesses on his behalf, the court held that the clause guaranteed the right to obtain the testimony of witnesses as well as the right to secure their attendance. "* * * The Framers of the Constitution did not intend to commit the futile act of giving to a defendant the right to secure the attendance of witnesses whose testimony he had no right to use." 388 US at 23.

The specific question involved in this case is whether the preclusion sanction of ORS 135.865 is an unconstitutional limitation upon the right to obtain the testimony of a witness. We now turn to that question.[3]

## CONDITIONING THE RIGHT OF COMPULSORY PROCESS

Reciprocal discovery statutes similar to ORS 135.835-135.865 have been enacted in most states.[4] Their purposes include these: "To assure to both the state and the defendant the opportunity, in advance of trial, to be provided with the information required by these statutes so as to enable each party to prepare adequately for trial and to prevent 'surprise' at the time of trial * * *"; "* * * to

---

[3] In cases decided after *Washington v. Texas,* 388 US 14, 87 S Ct 1920, 18 L Ed 2d 1019 (1967), the Supreme Court has noted the issue and expressed no opinion on the question. *Wardius v. Oregon,* 412 US 470, 472 n 4, 93 S Ct 2208, 37 L Ed 2d 82 (1973); *Williams v. Florida,* 399 US 78, 83 n 14, 90 S Ct 1893, 26 L Ed 2d 446 (1970). In *State v. Wolfe,* 273 Or 518, 525, 542 P2d 482 (1975), and *State v. Dyson,* 292 Or 26, 36 n 9, 636 P2d 961 (1981), this court observed the existence of the question, but did not decide it. *See also State v. Douglas,* 292 Or 516, 524, 641 P2d 561 (1982) (concurring opinion).

[4] Related statutes include ORS 135.455, the notice of alibi statute, and ORS 161.309, which requires a defendant raising a defense of lack of criminal responsibility to "file a written notice of his purpose at the time he pleads not guilty."

avoid unnecessary trials, to expedite trials and to prevent the expense and delay of continuances when either party claims to be unprepared to go to trial because of failure by the other party to comply with these discovery statutes. * * *," *State v. Dyson,* 292 Or 26, 35-36, 636 P2d 961 (1981); and to promote pretrial resolution of criminal cases. *See* Westen, *The Compulsory Process Clause,* 73 Mich L Rev 71, 138 (1974); Comment, *The Preclusion Sanction—A Violation of the Constitutional Right to Present a Defense,* 81 Yale L J 1342, 1356 (1972).

Reciprocal discovery is a fairly recent development in the field of criminal law. Following the decisions in *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), and *Jencks v. United States,* 353 US 657, 77 S Ct 1007, 1 L Ed 2d 1103 (1957), most states enacted reciprocal discovery statutes. Oregon's reciprocal discovery statutes were enacted in 1973. Or Laws 1973, ch 836, §§ 213-220. Discovery tends to equalize the investigative power of the parties. As a result, defendants are better able to defend, for to some extent they have the benefit of the vast power of the state in investigating crimes. Such statutes benefit the defendant in particular by tending to take away the edge the state enjoys by virtue of its powerful investigational resources. However, the legislature, in requiring the prosecution to make discovery under ORS 135.845, exacted a quid pro quo—discovery from the defendant under ORS 135.835—in default of which the trial judge could impose the sanction and "refuse to permit the witness to testify." ORS 135.865.

As stated, the fundamental right that the compulsory process clause aims to protect is "the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas, supra,* 388 US at 19. The ultimate aim of the reciprocal discovery statutes is largely congruent with that goal in the sense that such statutes insure that both sides have access to all the facts so that the jury can best determine where the truth lies.

■ As an abstract principle, it is doubtless permissible to establish reasonable procedures which must be followed in order to exercise a right guaranteed by the constitution.

*Poulos v. New Hampshire,* 345 US 395, 405, 73 S Ct 760, 97 L Ed 1105 (1953); *Carlile v. Continental Oil Company,* 81 NM 484, 468 P2d 885, 887 (1970); Annot., 64 ALR2d 506, § 3, at 513 (1959). The procedures must not, however, result in unfairness. In *Wardius v. Oregon,* 412 US 470, 93 S Ct 2208, 37 L Ed 2d 82 (1973), the Supreme Court set aside the defendant's conviction because the Oregon notice-of-alibi statute then in effect (which required the defendant to notify the prosecution of the place the defendant claimed to be at the time in question, and of the names and addresses the defendant intended to call to prove the alibi) did not make provision for reciprocal discovery to the defendant, and this impaired the defendant's rights to a fair trial under the Due Process Clause of the Fourteenth Amendment. 412 US at 472, 476. *Compare Washington v. Texas, supra,* in which the Supreme Court invalidated a Texas procedural statute providing that persons charged as principals, accomplices or accessories in the same crime could not be witnesses for each other because the statute interfered with a defendant's compulsory process rights "to present his own witnesses to establish a defense." 388 US at 19, 23.

■      Oregon's reciprocal discovery statutes, ORS 135.805-.873, do not deny the right to call witnesses. They merely set forth a procedure which must be followed in the trial process, in ways similar to other statutes or court rules. For example, in order to secure the attendance of a witness, it may be necessary to subpoena the witness and pay the witness a witness fee. Absent service of a subpoena and payment of the witness fee, in a practical way, the defendant is precluded from calling that witness. A criminal defendant has a right to attend the trial. Or Const Art I, § 10; US Const amend VI. But that right is subject to reasonable limitations upon the defendant's conduct in the courtroom. *See Illinois v. Allen,* 397 US 337, 90 S Ct 1057, 25 L Ed 2d 353 (1970) (defendant who continually attempts to disrupt trial proceedings can forfeit the right to be present at one's trial). In appropriate cases, constitutional rights must accommodate other legitimate interests in the criminal trial process. *See Chambers v. Mississippi,* 410 US 284, 295, 302, 93 S Ct 1038, 35 L Ed 2d 297 (1973) ("In the exercise of [the right of an accused to present witnesses in

his own defense] the accused, as is required of the State, must comply with established rules of procedure and evidence designed to establish both fairness and reliability in the ascertainment of guilt and innocence.").

Compulsory process constitutional clauses arose because of inequality between the prosecution's unrestricted right to call witnesses and the defendant's limited or nonexistent right to call witnesses. The framers perceived a need for the defendant to have the right to present evidence on an equal basis with the prosecution. *See* Westen, *The Compulsory Process Clause,* 73 Mich L Rev 73, 95, 99 (1974). Reciprocal discovery statutes, to the extent that they restrict the defendant's right to obtain testimony, do so on the same basis that they restrict the state. Similarly, to the extent that the statutes extend discovery rights beyond those existing before the enactment of the statutes, they do so reciprocally.

■ The discovery statutes were passed to give the accused a fairer trial, and to eliminate recesses, postponements and mistrials occurring incident to discovery during trial. It is doubtful whether the system will work unless sanctions can be imposed to enforce the statute.

> "We must start with the basic premise that discovery, in the abstract at least, is a desirable thing since it will tend to eliminate the element of surprise with its attendant consequences, i.e., disruption, continuances, even unfairness itself, at trial. If discovery is a desirable adjunct of trial, the basic concept of fairness in an adversary system dictates that it be available to every party involved in the litigation. If it is available to all parties, it can only be a meaningful tool if the rights of discovery are enforceable." Kane, *Criminal Discovery—The Circuitous Road to a Two-Way Street,* 7 USF L Rev 203, 213 (1973).

ORS 135.865 is evenhanded in the sense that it provides for reciprocal discovery and for sanctions against both the state and the defense.

Many courts, indeed, most courts, have upheld preclusion as a legitimate sanction for the failure to make discovery on the theory that such statutes do not deny the right to compulsory process, but merely impose a reasonable condition to the exercise of that right. *State v. Roberts,*

226 Kan 740, 602 P2d 1355, 1358 (1979); *State v. Smith,* 88 NM 541, 543 P2d 834, 836 (1975);[5] *State ex rel Simos v. Burke,* 41 Wis 2d 129, 163 NW2d 177, 181-82 (1968). *Contra: United States v. Davis,* 639 F2d 239, 243 (5th Cir 1981).

We uphold the preclusion sanction of ORS 135.865 as applied by the trial court in this case. In so doing, however, we further hold that the intrusion upon the defendant's right to call witnesses should be no more than is necessary to achieve the purpose of the statutes.

## LIMITATION UPON THE IMPOSITION OF THE PRECLUSION SANCTION

■ There can be no denying that the imposition of the preclusion sanction may result in the defendant's being unable to call witnesses whose testimony might be relevant, material and exculpatory. Therefore, the sanction should be imposed only when no lesser sanction would accomplish the aim of the statute, and then only if the state would be prejudiced if the witness or witnesses were permitted to testify even though the statute had not been complied with. In short, although we hold that the sanction procedures under the discovery statutes are permissible under Article I, section 11, we also hold that the statute must be applied in a reasonable manner by imposing the sanction which will infringe least upon the defendant's rights and which will achieve the goal of the statute.

At trial, after defense counsel's opening statement, the prosecution objected to defense counsel's statement that he would present witnesses, noting that counsel had not responded to a letter requesting discovery or otherwise complied with ORS 135.835. Upon finding that defense counsel had failed to comply with ORS 135.835, the trial

---

[5] This statement from *State v. Smith,* 88 NM 541, 543 P2d 834, 836 (1975) is typical:

"* * * Cases deciding this issue have found no violation of the right to compulsory process. The reasoning is that the alibi rule does not prevent defendant from compelling the attendance of witnesses; rather, the rule provides reasonable conditions for the presentation of alibi evidence. *Rider v. Crouse,* 357 F.2d 317 (10th Cir. 1966); *State v. Dodd,* 101 Ariz. 234, 418 P.2d 571 (1966); *Commonwealth v. Vecchiolli,* 208 Pa. Super. 483, 224 A.2d 96 (1966); *State ex rel. Simos v. Burke,* 41 Wis.2d 129, 163 N.W.2d 177 (1968). * * *"

court directed him to make his witnesses available for interviews during the noon recess. The prosecutor attempted to interview the witnesses then, but was unable to do so because defense counsel interposed himself, insisting that his witnesses answer no questions. When court reconvened, the prosecuting attorney reported this development. The trial court allowed one of the two witnesses to testify, but ruled that as a sanction for counsel's ongoing obstruction of the discovery process, the defense would be precluded from calling the defendant's girlfriend as a witness.

The trial court properly ordered that the witness be made available for interview, a remedy short of preclusion. Conceivably, this remedy would have avoided any prejudice to the prosecution. However, the defendant's attorney thwarted the court's efforts to avoid prejudice to the defendant and to the state, with the result that the state, in its cross-examination of the witness, was prejudiced by its inability to talk to the witness in advance. Although the witnesses need not have talked to the state, *compare State v. York*, 291 Or 535, 541, 632 P2d 1261 (1981), the conduct of the defendant's lawyer in preventing access to the witnesses, in and of itself, created prejudice to the prosecutor in thwarting its efforts to investigate the case and prepare for cross-examination of the witnesses.

We find support for this conclusion in *United States v. Nobles*, 422 US 225, 95 S Ct 2160, 45 L Ed 2d 141 (1975). There, the critical issue was the identification of the accused by two prosecution witnesses. The defense, attempting to impeach the credibility of these witnesses, repeatedly asked them about statements they had made, which were allegedly recorded in the written report of a defense investigator. The questions implied that the investigator's report showed that the witnesses had been unsure of their identification of defendant before trial. The trial court ruled that if the investigator testified about these statements, the defense would have to make relevant portions of his report available to the prosecution. When the defense announced that it would not comply with this condition, the trial court ruled that the investigator could not testify as to the interviews. Upholding this condition on the investigator's testimony, the Supreme Court held that under the circumstances, this was an appropriate means of

enforcing the "legitimate demands of the adversarial system," saying:

> "The court's preclusion sanction was an entirely proper method of assuring compliance with its order. Respondent's argument that this ruling deprived him of the Sixth Amendment rights to compulsory process and cross-examination misconceives the issue. The District Court did not bar the investigator's testimony. Cf. Washington v. Texas, 388 US 14, 19, 18 L Ed 2d 1019, 87 S Ct 1920 (1967). It merely prevented respondent from presenting to the jury a partial view of the credibility issue by adducing the investigator's testimony and thereafter refusing to disclose the contemporaneous report that might offer further critical insights. The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth. * * *" 422 US at 241.

Although the absence of a previous opportunity to talk to a witness may have no effect upon the cross-examination of the witness, we have no hesitation in saying that the opportunity to talk to a witness prior to the witness's testimony is, in many cases, of inestimable benefit to the examiner and cross-examiner. The conduct of defendant's attorney resulted in prejudice to the prosecution in its legitimate efforts to prepare for trial because the state was unable to contact the witnesses before trial to talk or attempt to talk to the witnesses, was unable to investigate the background of the witnesses, and was unable to investigate other sources of evidence which might be uncovered by reason of knowing of the existence of the witnesses. The court had no alternative but to either countenance the violation of the discovery statutes or impose the sanction.[6] Preclusion was appropriately ordered in this case.

---

[6] It has been suggested that holding the lawyer in contempt is a workable sanction short of preclusion. *See* Westen, *The Compulsory Process Clause,* 73 Mich L Rev 71, 138 (1974); Comment, *The Preclusion Sanction—A Violation of the Constitutional Right to Present a Defense,* 81 Yale L J 1342, 1359-60 (1972). *See also United States ex rel Veal v. Wolff,* 529 F Supp 713, 722 (D ND Ill, ED 1981); ABA Standards for Criminal Justice §§ 11.65, 11.68 (1980). Contempt may be an appropriate remedy in some circumstances. That case is not before us. *Cf. Illinois v. Allen,* 397 US 337, 344-46, 90 S Ct 1057, 25 L Ed 2d 353, 359-60 (1970). In *Allen,* the Supreme Court discussed the efficacy of the contempt remedy against a

■ We hold that the preclusion sanction of ORS 135.865 is not inconsistent with Article I, section 11, of the Oregon Constitution, provided that the court finds that the prosecution is prejudiced by the defendant's failure to comply with the reciprocal discovery statutes, and provided further, that it appears that no sanction short of preclusion effectively will avoid the prejudice which the defendant's lack of compliance created.[7]

We believe that the Supreme Court would reach the same result under the Sixth Amendment, for the reasons expressed above, and see no need further to discuss the federal constitutional question.

Affirmed.

**LENT, C. J.,** dissenting.

I agree with the majority that Section 11 of Article I of the Oregon State Constitution[1] guarantees to a defendant not only the right to have process to compel witnesses to attend his trial but the right to have them testify. I must dissent, however, from the majority's holding that the legislature can preclude a defendant's witness from testifying because defendant's counsel did not allow discovery.

The majority holds, in effect, that as a sanction for noncompliance with a rule of procedure, a defendant may be wrongly convicted of an entirely different crime. Such a sanction cannot be consistent with our most basic constitutional principles.

Under the statutory law of Oregon, one charged with the commission of a crime is assumed to be innocent

---

disruptive defendant as an alternative sanction to removing the defendant from his own trial, thereby working a forfeiture of his Sixth Amendment right to be confronted with witnesses against him.

[7] This holding limits language in *State v. Wolfe,* 273 Or 518, 524-25, 542 P2d 482 (1975), and *State v. Dyson,* 292 Or 26, 36, 636 P2d 961 (1981), insofar as the rights of a defendant are concerned. 292 Or 26, 36. Because of the compulsory process clause, prejudice to the state must be shown before preclusion is appropriate. We do not suggest that prejudice to the defendant need be shown in order to preclude prosecution witnesses. *See Dyson,* 292 Or at 36. *See also* Margolin, *The Oregon Court of Appeals and Statutory Pretrial Discovery,* 18 Willamette L Rev 279, 295 (1982).

[1] Oregon Constitution, Article I, Section 11 provides:

"In all criminal prosecutions, the accused shall have the right * * * to have compulsory process for obtaining witnesses in his favor; * * *."

until his guilt is established beyond a reasonable doubt. *See* former ORS 17.250(5) and 41.360(1), and present ORS 10.095(6) and Rule 309, Oregon Evidence Code. *See also State v. Burrow,* 293 Or 691, 693-94, 653 P2d 226, 234-239 (1982) (dissenting opinion). If our state law did not so provide, the Due Process Clause of the Fourteenth Amendment to the United States Constitution would do so. *In re Winship,* 397 US 358, 364, 90 S Ct 1068, 1073, 25 LEd 2d 368, 375 (1969), and *Jackson v. Virginia,* 443 US 307, 99 S Ct 2781, 61 LEd 2d 560 (1979).

Accordingly, the trial upon a criminal charge is for the purpose of establishing whether the defendant has committed the crime charged. As the majority acknowledges, the defendant is constitutionally entitled to have his witnesses testify in order to establish a reasonable doubt that he is guilty. Nevertheless, the majority here decides that the legislature and the courts may vitiate that constitutional right. The majority has adopted an *exclusionary rule,* not to further the purposes of the Constitution, not to protect the citizenry from the sometimes lawless acts of the government, not to remove the courts from participation in such lawless acts.

This exclusionary rule does no more than to further the prosecution's *statutory* right to discovery at the expense of preventing the trier of fact from considering evidence from which the true facts might be found. If the defendant's right to present his evidence arose only from statute, what the majority does here would be permissible, but it is not permissible to enervate the defendant's constitutional right.

The sanction authorized by the legislature, and now sustained by this court, for failure of defendant's counsel to permit discovery prevents the factfinder from having relevant evidence. This sanction may well result in the conviction of one who did not commit the charged crime. Surely the legislature is not so lacking in imagination as to prevent it from fashioning a sanction for failure to allow discovery that does not silence witnesses who have evidence favorable to an accused.

The majority turns to examples of how the defendant's right to compulsory process may be conditioned by

the legislature. For instance, the majority notes that if a defendant does not jump through certain hoops, he may not be able to subpoena a witness into court. That the witness in such circumstances is not present is not a sanction imposed by the state. The example is helpful, however, in drawing attention to a more aptly comparable situation. Suppose that defendant desires the presence of a witness but fails to request and serve a subpoena. In the course of the trial and during the defendant's case in chief, the witness is discovered to be in the courtroom and comes forward, willing to testify when called by the defendant. Would the majority hold that the witness would not be permitted to testify because the defendant failed properly to subpoena the witness?

Likewise, the example of excluding the unruly defendant from the courtroom does not prevent the presentation of relevant evidence to the factfinder; the exclusion simply permits the trial to continue.

Other matters mentioned by the majority have no more relevance to the issue. No one argues that the defendant is not bound by certain rules of procedure, such as the time at which his evidence is to be presented, the order of opening statements and argument, etc. Nor does anyone argue that the defendant is not bound by the rules of evidence, which keep certain matters such as hearsay from the factfinder because hearsay injures the search for truth.

There is little to be gained by proceeding through the majority's opinion paragraph by paragraph. An attentive reading will show that it is almost entirely devoted to explaining that it is permissible to require a defendant to disclose his witnesses in advance of calling them. But that is not challenged, and it is not the issue. To belabor the point that this requirement is reciprocal merely draws attention away from the real issue. The real issue is not the requirement but the sanction of trying the case without the testimony of a witness, although that testimony may be entirely truthful, persuasive, and decisive of the defendant's innocence of the substantive charges. The majority opinion simply ducks this issue of the mismatch between the

violation of the disclosure requirement and the sanction of a possibly wrongful conviction of a serious crime.[2]

One more premise should be mentioned, however, and that is the admonition to the trial judge to use the sanction of preclusion only as a last resort. That would not make it permissible as against the Constitution. Suppose that the statute merely said that the defendant could not call a witness unless his name were given to the state 72 hours in advance of trial. What the majority is saying is that the state, acting through the court, could prevent the defendant from having his unannounced witness testify. It does not become any more constitutionally palatable to have the judge go through some sort of checklist of lesser sanctions before proceeding to the ultimate sanction. If he can exercise the ultimate sanction at all, he can do it without considering whether there are lesser sanctions that might be applied.

I do not argue that reciprocal discovery is not a worthy object. If the state fails to allow discovery, it does not lose any right guaranteed to the state under the Constitution, but if the defendant disobeys the statute, the rule of this case is that he loses for failure to abide by a statute, a constitutional right; moreover, it is the loss of a constitutional right, the exercise of which is an aid to the factfinder in deciding whether an accused is guilty.

As acknowledged by the majority, the constitutional guarantee with which we are here concerned is the right to present a defense so that the factfinder may decide where the truth lies. The majority's decision is not in accord with its acknowledged premise.

Today's decision is no way to deal with one of the most basic guarantees in criminal procedure. It is an aberration in the name of "reasonable" departures from constitutional guarantees. We must look forward to another day when the court will once again treat the Constitution as binding law, not as mere weights to be balanced in the majority's own scale of values.

Linde, J., joins in this opinion.

---

[2] Moreover, when the nondisclosure is the fault of defendant's counsel, as in this case, excluding the witness may merely set the stage for a post-conviction claim of inadequate representation.