Argued and submitted November 30, 1984, resubmitted In Banc April 4, reversed and remanded July 17, reconsideration denied September 13, petition for review denied October 29, 1985 (300 Or 180)

STATE OF OREGON,
*Appellant,*

*v.*

RAMON VARGAS,
*Respondent.*

(C83-12-35788; CA A32503)

704 P2d 125

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

ROSSMAN, J.

Gillette, J., concurring.

Warren, J., dissenting.

## ROSSMAN, J.

Defendant was charged in several counts with possession of controlled substances. The trial court dismissed the case on defendant's motion, concluding that the state had violated defendant's constitutional right to have compulsory process for obtaining witnesses in his favor.[1] We reverse.

Defendant was arrested on December 7, 1983, during a raid on a house in Portland. He was found in a locked room in the basement, along with a woman, Tellez; defendant and Tellez were the only people present in the room when the police entered. The officers found small amounts of heroin, cocaine and methamphetamine in the room. The officers also found a food stamp card, a bank book, letters and two traffic tickets, all bearing defendant's name. Nothing was found identifying Tellez as the owner or occupant of the room. More drugs and stolen property were found elsewhere in the house, and four other persons were found on other floors. All six were arrested. Four, not including Tellez, were charged with possession offenses. Custody reports for Tellez, defendant and one other arrestee indicate that the three were put "on hold" by the U.S. Immigration and Naturalization Service as suspected illegal aliens.

Defendant appeared in court on December 8, 1983, and was appointed counsel. His attorney received custody reports for the other arrestees from the district attorney on that date. Defendant's preliminary hearing was held on December 15, 1983, on which date his attorney received further discovery, consisting of police reports.

After the district attorney decided not to prosecute Tellez, she was turned over to federal immigration officials,

---

[1] Defendant's motion relied on both the Oregon and the United States Constitutions. Article I, section 11, of the Oregon Constitution provides, in pertinent part:

"In all criminal prosecutions, the accused shall have the right * * * to have compulsory process for obtaining witnesses in his favor * * *."

The Sixth Amendment to the United States Constitution provides, in pertinent part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to have compulsory process for obtaining witnesses in his favor * * *."

The federal right applies also to state prosecutions through the Due Process Clause of the Fourteenth Amendment. *Washington v. Texas,* 388 US 14, 87 S Ct 1920, 18 L Ed 2d 1019 (1967).

charged as an illegal alien and held in the county jail under federal authority. In response to her request, Tellez was allowed to "voluntarily depart" from the United States, returning to Mexico on December 15, 1983.[2]

In his motion to dismiss, defendant claimed that the state's turning Tellez over to the federal authorities so that she could leave the country or be deported without giving him the opportunity to interview her denied him the right to compel her production as a material witness in his favor. The state contends that defendant's constitutional right was not violated, because his attorney had the opportunity to interview Tellez between the time of her arrest on December 7, and when she left this country on December 15. Defendant contends that the state was obligated to keep Tellez within its jurisdiction as a potential material witness until he could determine whether her testimony was necessary to his defense.

The trial court agreed with defendant's contention, stating in its letter opinion:

"* * * [when] an arresting jurisdiction has reason to know that an alien witness possesses material evidence concerning a defendant charged with a crime, it has a duty to make reasonable efforts to keep that witness available to the jurisdiction, and an affirmative duty not to place that witness beyond the reach of the jurisdiction."

The court concluded that the state had an obligation to detain Tellez as a material witness and dismissed the case, "[b]ecause this witness and defendant are [the] sole witnesses to the crime charged." We reverse.

■ The trial court relied on *United States v. Valenzuela-Bernal,* 458 US 858, 102 S Ct 3440, 73 L Ed 2d 1193 (1982), which sets forth the compulsory process standard we are to

---

[2] Voluntary departure is an optional method for certain deportable aliens to leave the United States. 8 USC § 1252(b). If an alien agrees to depart voluntarily, the government does not need to hold a deportation proceeding. Tellez was escorted to the border by federal officers, and the cost of her departure was borne by the United States. The state contends, in its brief, that it is undisputed that Tellez voluntarily departed on December 12, 1983. All of the evidence demonstrates that the actual date was December 15, 1983.

apply under the federal constitution in criminal cases involving illegal alien witnesses.[3] In that case, the defendant was charged with knowingly transporting an alien illegally into the United States. He was arrested after driving a car with five passengers through a Border Patrol checkpoint. Three of the passengers also were arrested, and two others escaped. The three arrested passengers were illegal aliens, and all identified the defendant as the driver. Two of the aliens were deported to Mexico, and one was detained to provide evidence against the defendant.

The Supreme Court analyzed the case under both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment. As a threshold matter, the court considered the dual and sometimes conflicting responsibilities the government is faced with when illegal immigrants become involved in criminal activities. On the one hand, it is charged with the enforcement of our criminal laws, while on the other, it is obligated to "carry out the immigration policies Congress has enacted." 458 US at 864. Accordingly,

> "* * * its exercise of these manifold responsibilities is not judged by standards which might be appropriate if the Government's only responsibility were to prosecute criminal offenses." 458 US at 866.

■ Therefore, a violation of the Compulsory Process Clause or of the Due Process Clause is not established by the mere fact that an illegal alien witness was deported or escorted out of the country. Rather, a defendant must establish that he has suffered prejudice as a result of the government's actions. Only then is the government subject to sanctions. Specifically,

> "* * * sanctions may be imposed on the Government for deporting witnesses only if the criminal defendant makes *a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense,*

---

[3] Under *State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983), we must consider the claim under the state constitution before we may consider whether a right guaranteed by the federal constitution was violated. Defendant contends that we should apply a more liberal test under the Oregon Constitution. He does not provide a principled reason for the distinction and we believe that the federal cases have adopted the proper analysis. We note that the two clauses are virtually identical. We therefore decide this case Under Article I, section 11, but apply the federal analysis to the state claim. *See State v. Mai,* 294 Or 269, 272, 656 P2d 315 (1982).

in ways not merely cumulative to the testimony of available witnesses. * * *" 458 US at 873. (Emphasis supplied.)

A defendant must also show that "there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." 458 US at 874. Because the defendant in *Valenzuela-Bernal* made "no effort to explain what material, favorable evidence the deported passengers would have provided," 458 US at 874, the Supreme Court held that the Court of Appeals erred in dismissing the case.

The Court stated that the required showing may be made on the basis of agreed facts, or the defendant may submit additional facts. In the latter case, because

"* * * the explanation of materiality is testimonial in nature, and constitutes evidence of the prejudice incurred as a result of the deportation, it should be verified by oath or affirmation of either the defendant or his attorney. * * *" 458 US at 873.

Here, defendant and his attorney stated in affidavits in support of the motion to dismiss that Tellez would testify that defendant does not use or sell drugs, that the drugs found in the basement room belonged to Tellez or her acquaintances and not to defendant and that defendant was not aware of the presence of the drugs.

What remains is for us to evaluate the facts of this case in the light of the *Valenzuela-Bernal* test. We note, however, that our task is necessarily made more difficult by the fact that defendant's motion was granted before trial. As the Supreme Court stated:

"Because determinations of materiality are often best made in light of all of the evidence adduced at trial, judges may wish to defer ruling on motions until after the presentation of evidence." 458 US at 874.

In any event, the first part of the test is whether defendant made a sufficient showing of the materiality and favorability of Tellez's potential testimony under *Valenzuela-Bernal*. To support defendant's claimed need for her testimony, both defendant and his attorney filed sworn statements as suggested by the Supreme Court. If Tellez were to have testified as those statements claimed that she would, the testimony would likely have been both material and favorable

to his defense. It would be an unusual case in which the testimony of an eye witness would not be at least material.

The difficult question concerns the next part of the test. The Supreme Court recognized that the situation in which a defendant claims that an unavailable witness would have provided exculpatory evidence is ripe for fabrication and abuse and, accordingly, required that the defendant's showing of materiality and favorability must be "plausible." *Webster's Third New International Dictionary* (1976) defines "plausible" as "superficially worthy of belief; credible; being such as may be accepted as real."

Obviously, a plausible showing would require considerably less than would a probable one. Nevertheless, the need to establish plausibility places an affirmative burden on defendant, which must be met to establish a violation. That this is so is apparent from the Supreme Court's rejection of the "conceivable benefit" test, which the Circuit Court had applied. Under that test, a constitutional violation was held to have occurred whenever "the alien's testimony could conceivably benefit the defendant." 348 US at 862, quoting from *United States v. Valenzuela-Bernal*, 647 F2d 72, 74 (9th Cir 1981). The court rejected that approach, in part, because

> "* * * the number of situations which will satisfy this test is limited only by the imaginations of judges or defense counsel." 458 US at 866-67.

Under the *Valenzuela-Bernal* plausibility test, a defendant's allegations of how the missing witness woud testify must be credible or worthy of belief.[4]

■ Looked at pragmatically, defendant's showing is not plausible in that it is unlikely that Tellez would testify as he claims. Tellez was not considered a suspect for any crime. The chances of her waiving her rights under the Fifth Amendment in order to incriminate herself so that she could exculpate defendant seem unrealistic and remote. Moreover, in the light of all of the evidence pointing to defendants proprietary interest in the room where the drugs were found (and the lack of any similar evidence relating to Tellez), defendants self-

---

[4] The dissent mistakenly reads this opinion as requiring that the testimony of the missing witness be plausible. That was not our intention. What must be plausible is the defendant's allegations regarding how the unavailable witness would testify.

serving speculation regarding her testimony is neither "credible" nor "superficially worthy of belief."

Finally, even if defendant could establish plausibility, he has not demonstrated that there is a reasonable likelihood that Tellez's testimony could have affected the outcome. He was caught red-handed in at least constructive possession of various illegal substances. *See State v. Oare*, 249 Or 597, 439 P2d 885 (1968). Given the unlikelihood that Tellez would have incriminated herself, either expressly or implicitly, it is unlikely that her testimony could have had an effect on the outcome of this case, had it in fact been tried. We conclude that the trial court erred by dismissing the charges against defendant.

■ That conclusion is buttressed by the fact that defendant failed to help himself when he had the chance. A criminal defendant has certain rights and the state cannot interfere with his exercise thereof. However, he also has an obligation to act in his own best interests. Defendant's view of the criminal justice system is too lopsided; the scales are more evenly balanced. For example, on one side of the scales, it is clear that defendant has a right to compel the production of a material witness in his favor, and the state has a duty not to interfere with the defendant's perfection of that right. The state is properly subject to sanctions when it does so. On the other side, defendant has a duty to obtain valuable evidence on his own if he has reasonable means available to do so. If, when given the proper chance, a defendant does not satisfy that obligation, and a witness is lost, he will not later be heard to complain. This is in recognition of the premise of the law that it is not the state's responsibility to make defendant's case for him.

In the case before us, it is apparent that, even before Tellez was allowed to leave the jurisdiction, defendant had failed to fulfill his duty to himself. This case was processed in the normal course. There was no evidence of any unfairness on the part of the state. There were no "hurry-ups" or sneaky behind-the-back manipulations, nor was the witness concealed or promptly whisked away.

For eight days, the witness was in local custody and available for interviewing and subpoenaing by defendant's lawyer. As the trial court found, defendant was given custody

reports on December 9, which told of the witness' name and whereabouts. Even if that were not the case, defendant obviously knew what happened in his own room and should have realized that Tellez was a potentially important witness. His lawyer, who had extensive knowledge of the criminal and immigration laws and the Spanish language, should have moved promptly, but did not. The lawyer did no investigation before the preliminary hearing, and by then Tellez was gone.[5] Furthermore, there is some indication in the record that defendant's court-appointed lawyer was also appointed, on December 8, to represent Tellez. Although there is no direct evidence in the record of that fact, at the hearing on defendant's motion, the prosecutor said that, should the case go to trial, he could prove that the same lawyer represented both Tellez and defendant. The assertion was repeated during the state's closing argument. It was never denied by defendant. If, in fact, that was the case, not only did defendant's attorney know Tellez's name and whereabouts for over a week before her departure, he presumably had a chance to talk to her as well.

If defense counsel had acted with reasonable diligence and promptness, Tellez could have been interviewed regarding defendant's case and subpoenaed. Defendant had ample opportunity to compel her attendance. A dismissal of this case would, in effect, punish the state for not protecting defendant from himself and his attorney. The Compulsory Process Clause does not entitle defendant to that kind of protection.

Reversed and remanded.

**GILLETTE, J.,** concurring.

I join in the majority's disposition of this case. I wish to add an additional ground, not mentioned by the majority.

Part of Tellez' testimony would allegedly be to the effect that defendant does not use or sell drugs and that he was not even aware of the presence in his room of the drugs that are the gravamen of the present case. The difficulty with such proffered testimony is that, however couched, it is not—and

---

[5] The lawyer testified that the preliminary hearing is "[b]asically * * * a tool that defense attorneys mostly use to get discovery" to "see what the heck is going on."

could not be—admissible. It would be absurd to read *United States v. Valenzuela-Bernal,* 458 US 858, 102 S Ct 3440, 73 L Ed 2d 1193 (1982), as requiring a new trial on such a showing, and I do not so read it.

I agree with the majority that it is not plausible that Tellez would otherwise incriminate herself. I therefore concur.

Joseph, C. J., and Richardson and Warden, JJ, join in this concurring opinion.

**WARREN, J.,** dissenting.

I think that the majority has decided this case incorrectly under both the Oregon and the United States Constitutions.[1] The majority applies *United States v. Valenzuela-Bernal,* 458 US 858, 102 S Ct 3440, 73 L Ed 2d 1193 (1982), too strictly and misinterprets the case and the policy which it implements. Because I think that the majority opinion does not accord due recognition to defendant's constitutional rights, I dissent.

*United States v. Valenzuela-Bernal, supra,* holds that sanctions may be imposed on a government for deporting alien witnesses if the defendant "makes a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense * * *." 458 US at 873. The majority concedes that the testimony which defendant asserted Tellez would provide would have been material and favorable to his defense, but concludes that defendant's showing was not plausible. Here the majority simply misreads *Valenzuela-Bernal.* The requirement is not that the testimony of the missing witness would be plausible, *i.e.,* credible to the jury. The United States Supreme Court stated:

> "Sanctions may be imposed on the Government for deporting witnesses * * * if the criminal defendant makes a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense,

---

[1] Considering the arguments made before this court and below, and the language of the constitutional provisions, I agree that the analysis under the state and federal constitutions should be the same. Although it is arguable that *State v. Gann,* 254 Or 549, 565-69, 463 P2d 570 (1969), pronounced a different test, that case is factually distinguishable in that the witnesses which the defendant requested were transferred out of state *before* the defendant had been appointed counsel. 254 Or at 566.

in ways not merely cumulative of the testimony of available witnesses. * * *

"As in other cases concerning the loss of material evidence, sanctions will be warranted for deportation of alien witnesses * * * if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact. See *Giglio v. United States,* 405 US 150, 154, 31 L Ed 2d 104, 92 S Ct 763 (1972). In making such a determination, courts should afford some leeway for the fact that the defendant necessarily proffers a description of the material evidence rather than the evidence itself." 458 US at 873-74.

Thus the rule of *Valenzuela-Bernal* is that if, from the affidavits of defendant or his attorney it is plausible that the missing witness' testimony would be material and favorable to the defense in ways not merely cumulative of other testimony, sanctions are appropriate if the testimony could have affected the judgment of the trier of fact. In making that determination, the United States Supreme Court recognized that the defendant's proffered evidence will be only descriptive of the missing witness' testimony.

Both defendant and his attorney have submitted sworn affidavits which set forth the facts to which they believed Tellez would testify. These facts were that defendant does not use the seized drugs, that defendant does not sell drugs and that defendant did not own and was not aware of the presence of the drugs and other contraband found in the basement. In addition, they asserted that Tellez would testify that the seized drugs belonged to her and/or her acquaintances and friends. Although, in the form presented in the affidavits, these statements would be subject to objections, it is not unlikely that a witness having knowledge of the facts summarily described in the affidavits would have first hand knowledge of facts supporting the ultimate facts set out in the affidavit.

If Tellez were to have testified as defendant claimed she would, it is more than plausible, it is clear that the testimony would have been both material and favorable to the defense. Although the situation in which a defendant claims that an unavailable witness would have provided exculpatory evidence is ripe for fabrication and abuse, if the unavailability of the witness is due to some act or omission on the part of the state, defendant is entitled to some lenity.

The Supreme Court recognized the complexity and unfairness of the situation in which a defendant must demonstrate the favorability and materiality of the testimony of an absent witness whom he did not have an opportunity to interview by requiring only a "plausible" showing of materiality and favorability. It is not incumbent on a defendant to show, as the majority asserts, that the testimony would be credible and that the absent witness' testimony would be believed and would have affected the outcome. The determination of credibility is for a factfinder, and the testimony proffered in this case is not facially incredible. Defendant must show only that the testimony would have been material and favorable to his defense. In addition, it cannot be said that Tellez' testimony would only have been cumulative, because she was the only other witness to his arrest and he was privileged not to testify.

The majority characterizes Tellez' claimed testimony as necessarily self-incriminating and then concludes that it is not plausible to believe that she would waive her rights under the Fifth Amendment in order to exculpate defendant. I believe that, under *Valenzuela-Bernal*, unless the testimony is facially incredible, the test is not whether her testimony would have been believed but whether her testimony "*could* have affected the judgment of the trier of fact." 458 US at 874. (Emphasis supplied.) It is clear that Tellez could testify to several material and favorable facts without incriminating herself in any way. For these reasons, I think that defendant's showing was sufficient under *Valenzuela-Bernal*. Because the state released Tellez without advising defendant of its intention to do so, I would affirm the trial court's dismissal of the case.[2]

Buttler, Young and Newman, JJ, join in this dissent.

---

[2] The majority says that defense counsel represented Tellez as well as defendant. If that is the case, the result the majority reaches is more clearly wrong. Having been appointed to represent Tellez, defense counsel would have no reason to believe that she would be released for voluntary departure without notice to him. Under this scenario, the state did clearly, without any fault chargeable to defendant, put a material witness beyond the reach of the jurisdiction. It is patently unfair to chastise defense counsel, as the majority does, for failure to preserve her testimony.