Argued and submitted April 6, reversed and remanded May 10, 1983

# STATE OF OREGON,
*Respondent on review,*

*v.*

# EMERY MONROE BURDGE,
*Petitioner on review.*

## (TC 81-1520, CA A24751, SC 29283)

664 P2d 1076

Helen I. Bloch, Portland, argued the cause and filed the petition for petitioner on review. On the brief was Gary D. Babcock, Public Defender, Salem.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Lent, Chief Justice, and Peterson, Campbell, Roberts, Carson and Jones, Justices.

JONES, J.

**JONES, J.**

This case involves two issues.

First, we consider the propriety of a trial judge's refusal to allow a defense witness to testify because the defense failed to disclose the name of the witness prior to trial allegedly in violation of reciprocal discovery statutes.

Second, we consider the propriety of the trial judge's refusal to allow a witness's testimony because of violation of a stipulated agreement between the attorneys to exclude witnesses and the application of OEC 615 to this case.

We hold that exclusion of the witness's testimony was reversible error.

## FACTS

In this case, an undercover operative, apparently working under an agreement that he would not be prosecuted for drug charges, was hired to a temporary position as a deputy sheriff for Linn County. His tenure was to be for four months during which he was to participate in an undercover drug buy program and then testify against the sellers.

After a series of introductions and negotiations with the defendant and his son regarding a marijuana purchase, the operative met the defendant at a gas station on June 9, 1981. The operative testified that the defendant explained he had been having trouble contacting his drug connection and provided the operative a telephone number to call that evening. The operative testified that he called and spoke to the defendant several times at this number.

The following day, June 10, 1981, the operative met the defendant and his son at the gas station, and a short time later a third party arrived and was pointed out to the operative as the proverbial "connection." Defendant's son introduced the operative to the "connection" and one pound of marijuana was purchased for $500.

In addition to the operative's testimony, a detective testified to observing the defendant at the gas station on the dates of the alleged meetings, to witnessing the operative make telephone calls (he did not testify as to having seen what

number was called or what was said), and to following him to the defendant's estranged wife's residence.

Defense counsel was not told before trial what telephone number the operative called. The state did not reveal the number on direct examination and it was only on cross-examination that the number was disclosed as 367-4815, which apparently was the home number of the defendant's wife. The telephone number was written on a small scrap of paper produced by the operative while on the witness stand. Throughout the operative's testimony, the defendant's wife was seated in the courtroom in a position to hear the testimony. She had not been included on the defense witness list provided to the state since the defendant did not intend to call her as a witness.

■ Later, defense counsel attempted to call the defendant's wife as a witness concerning the telephone number. The prosecuting attorney initially objected to her testimony on "discovery grounds." The prosecutor also advised the trial court that there had been a stipulation between the attorneys that witnesses to be called would be excluded, raising this as a further ground for his objection to the wife's testimony. Defense counsel acknowledged that such an agreement between the attorneys had been made and both sides agree that the court had not been advised of the agreement prior to the prosecutor's objection.[1] The trial court then asked the defense for an offer of proof. The court was advised that if the wife was allowed to testify she would state that the telephone number testified to by the operative was her home telephone number, and that during the period of days involved in the drug negotiations and subsequent transaction she and her husband were separated and he was not living at her residence. She would further testify that on the evening the operative testified he called her number and spoke to her husband that her husband was not there and that no such call was received. After hearing the offer of proof, the trial court sustained the

---

[1] We are not unmindful of the somewhat common practice often referred to as a "local rule" where attorneys may by stipulation agree to certain facets of the conduct of a trial. We believe that attorneys as officers of the court and men and women of integrity should abide by the agreements struck with their colleagues. However, the violation or breaking of these agreements should rarely impose upon the court a power to impose a sanction as severe as the one imposed in the instant case. Certainly the better practice, and the practice that this court encourages, is that witness exclusion/sequestration agreements be formalized with the court prior to the commencement of trial.

state's objection without comment. Therefore, the record is unclear as to the basis for the court's ruling and, consequently, our analysis assumes that either one or both grounds were the basis for the court's ruling.

## THE DISCOVERY ISSUE

In *State v. Mai,* 294 Or 269, 271, 656 P2d 315 (1982), we pointed out:

> "ORS 135.805-.873 are comprehensive statutes which provide for reciprocal discovery by the prosecution and the defense. The statutes require, *inter alia,* the disclosure of the names and addresses of witnesses the party intends to call at trial. ORS 135.865 provides that the trial court, '[u]pon being apprised of any breach of the duty [of disclosure] * * * may * * * refuse to permit the witness to testify * * *.' "

In *Mai,* defense counsel advised the jury in his opening statement that he would present certain witnesses. The witnesses had previously not been disclosed to the prosecution and the state objected to the calling of the witnesses. The court found that defense counsel had in fact failed to comply with ORS 135.835 and directed him to make his witnesses available for interviews during the recess. Defense counsel then obstructed the prosecutor's attempt to interview the witnesses by advising them that they need not answer the state's questions during the interview. After being advised of defense counsel's conduct, the trial court imposed sanctions and prohibited the calling of the defendant's girl friend as a witness as a penalty for violation of the reciprocal discovery statutes and obstruction of the discovery process. Because the defendant's attorney thwarted the court's efforts "to avoid prejudice to the defendant and to the state," the state was prejudiced by its inability to talk to the witnesses in advance. Our holding in *Mai* limited the language in *State v. Wolfe,* 273 Or 518, 524-25, 542 P2d 482 (1975), and *State v. Dyson,* 292 Or 26, 36, 636 P2d 961 (1981),[2] insofar as the rights of the defendant are

---

[2] In *State v. Dyson,* 292 Or 26, 636 P2d 961 (1981), we said that while prejudice must always be considered in deciding what sanction to impose for violation of the discovery statute, its absence does not preclude the imposition of a sanction because "efficient judicial administration" might be frustrated by the violation. In *Dyson,* we found such frustration when the district attorney failed to respond to defendant's discovery request until four days before trial and then contended that postponement was the only proper remedy. More significantly, however, we found that such frustration is particularly apparent where there has been a "history of non-compliance with court rules and court directives" by the state. *Id.* at 36.

concerned. We held that prejudice to the state must be shown before preclusion is appropriate. We also pointed out that prejudice to the defendant need not be shown in order to preclude prosecution witnesses. We do not depart from our holding in *Mai;* however, we find this case to be factually distinguishable from *Mai* primarily because of the type of witness and testimony offered here.

This case is simply a matter of tactical trial advocacy. Counsel elected to call an "impeachment" witness after hearing the operative's testimony.

■ Proffered testimony of the defendant's wife would have been of substantial value to the defendant. The wife's testimony would have been important for the purpose of impeaching the police operative's testimony. This is often called impeachment by "contradiction." *See* McCormick on Evidence 97, § 47 (2nd ed 1972).[3]

While we are not passing judgment upon the credibility of the operative, we do note that the record clearly reflects that this operative was, to use police vernacular, "working off a beef," and the jury had heard testimony alerting them to the predicament that this witness was in. His failure to cooperate could have resulted in his own prosecution. The wife's testimony could have led the jury into a weighing process as to whether or not the police operative had actually made the critical telephone call testified to. This is clearly the nature of a jury's work.

■ The use of impeachment witnesses is so basic a function of trial advocacy as to engender it a special place in trial lawyer training.[4] Further, while it may in many cases be reasonably predictable what an adverse witness will testify to,

---

[3] The state has suggested that the witness's testimony would have merely been impeachment on a "collateral matter," *see* Dolan, *Rule 403: The Prejudice Rule in Evidence,* 49 So Cal L Rev 220 (1976), and therefore was otherwise inadmissible. The witness's proffered testimony would have refuted the operative's statement that he called her telephone number. This was not a collateral matter. We agree with Professor McCormick's description of what is not a collateral matter as "facts which would have been independently provable regardless of the contradiction are not 'collateral.' " *See, State v. Oswalt,* 62 Wash 2d 118, 381 P2d 617 (1963); 3A Wigmore on Evidence 961, § 1003 (Chadbourn Rev 1970); 98 CJS 654, CJS, *Witnesses* §633b.

[4] For an intellectual discussion of impeachment, *see* American Bar Association, Litigation, *A Letter in Which Cicero Lays Down the Ten Commandments of Cross-Examination* (Translated and edited by Irving Younger), Vol. 3, No. 2 (1977).

therefore making the selection of impeachment witnesses possible, this is not always the case. The operative's disclosure of the telephone number required defense counsel to offer an impeachment witness that had not previously been contemplated. The record clearly shows that defense counsel was not advised via police reports, prosecutors' disclosures or in any other manner the exact telephone number that the operative called. We believe this is inconsistent with the discovery requirements of *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963).[5] It was only on cross-examination that this information became known to the defense. Without this information, defense counsel could not have anticipated that it would become necessary to call the wife to impeach the operative. In *State v. Wolfe,* 273 Or at 522, we stated:

> "It appears from a reading of the provisions of these statutes that, depending upon the facts of the particular case, these provisions of ORS 135.835(1) and 135.845(1) may have no proper application to a defense witness who was called to impeach the testimony of a state's witness. Thus, it may not develop until the trial is in progress that a state's witness has given testimony which is subject to impeachment by some person the defense had not previously intended to call as a witness."

Our review of the trial record indicates that as soon as defense counsel became aware that it would be necessary to call the wife to impeach the operative, he advised both the prosecuting attorney and the court and suggested that the

---

[5] ORS 135.815(1) requires disclosure of the name of the state's intended witnesses, "together with their relevant written or recorded statements or memorandum of any oral statements of such persons." In *State v. Bray,* 31 Or App 47, 569 P2d 688 (1977), the Court of Appeals held that an officer's "fragmentary notes" are not a statement within the meaning of the statute. We are not departing from that analysis here and agree that the scrap of paper upon which the telephone number was written was a "fragmentary note." However, the telephone number itself was factual information which was discoverable by the defense and should have been provided to defense counsel.

As a practical matter, we are somewhat concerned with the nature of the police investigation in this case as a whole. We wonder if it is proper police practice for a police operative to retain a vital telephone number on a scrap of paper critical to the state's circumstantial case, and only disclose this information during cross-examination. It would seem that the better practice would be for the operative to have provided the telephone number to his detective supervisors who, in turn, had the ability to trace the telephone number to its owner and identify the subscriber. This appears so basically fundamental in an undercover drug investigation that the detectives should have ordered the operative to provide this information unless, of course, in this case the tail was wagging the dog.

state be allowed a reasonable time to interview the witness. We believe this is consistent with our further holding in *Wolfe* where we stated:

> "It does not follow, however, that in such an event the defendant has no duty to disclose to the state the name of such a witness. ORS 135.845(2) provides that if a party finds 'either before or *during trial additional material or information,* which is subject to or covered by these provisions, he must *promptly* notify the other party of the additional material or information.' (Emphasis added)" *Ibid.*

■ We believe that the defendant herein substantially complied with the provisions of ORS 135.845(2) as required by *Wolfe.*

■ The impeachment testimony was relevant, not cumulative, and would have been properly before the court if allowed. OEC 401 defines "relevant evidence" as

> "* * * evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The admissibility of such evidence is governed by OEC 402, which provides:

> "All relevant evidence is admissible, except as otherwise provided by the Oregon Evidence Code, by the Constitutions of the United States and Oregon, or by Oregon statutory and decisional law * * *."

■ We find the wife should be construed as an "impeachment" witness. Her testimony clearly was being offered to impeach the testimony of the operative. Trial attorneys frequently know who their impeachment witnesses will be, but on the other hand, occasionally find that as a result of surprise testimony impeachment witnesses must be secured and offered unexpectedly. We believe this occurred in this case. Therefore, ORS 135.805-.873, the reciprocal discovery statutes, were not violated and the trial court should not have excluded the testimony on that ground.

However, our inquiry cannot stop here because we do not know the basis for the trial court's ruling. The trial judge could have based his ruling on violation of the "exclusion" agreement of the lawyers or OEC 615.

## THE APPLICATION OF OREGON
## EVIDENCE RULE 615

It is generally recognized that a court has a right, in the trial of a case, to exclude witnesses from the courtroom. Often described as an order of exclusion, or separation, or sequestration,[6] its purpose is to prevent any possibility that the testimony of one witness may be influenced or tainted by what he learned from hearing the testimony of another. *Geders v. United States,* 425 US 80, 87, 96 S Ct 1330, 47 L Ed 2d 592, 598 (1976); *see also* 53 Am Jur 46, *Trial,* § 31.

Exclusion of witnesses in Oregon is controlled by OEC 615:

"At the request of a party the court may order witnesses excluded until the time of final argument, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employe of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause."

This rule is a modified version of Federal Rule of Evidence 615.[7] Rather than provide that witnesses "shall" be excluded "so that they cannot hear the testimony of other witnesses," the Oregon rule instructs that witnesses "may" be excluded. The question is whether the rule or "stipulation" was violated and, if so, what sanctions are permissible.

Prior to the enactment of OEC 615, Oregon cases substantively followed the lead case of *Holder v. United States,* 150 US 91, 14 S Ct 10, 37 L Ed 1010 (1893). In *Holder,* a defendant was on trial for a murder committed in the Choctaw

---

[6] "Sequestration" generally applies to a rule requiring no contact of any nature with other witnesses while "exclusion" generally means merely excluded from the courtroom. An analogy is permissible when discussing the imposition of sanctions for violation of either rule. OEC 615 does not use the term "sequestration."

[7] FRE 615 provides:

"At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause."

Nation. The court ordered the exclusion of all witnesses; however, one witness remained in the courtroom and was later called to testify. Citing a violation of the court's exclusion order, the court prohibited the witness from testifying. The United States Supreme Court reversed, stating:

> "* * * If a witness disobeys the order of withdrawal, while he may be proceeded against for contempt and his testimony is open to comment to the jury by reason of his conduct, he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground merely, although the right to exclude under particular circumstances may be supported within the sound discretion of the trial court. * * *" *Id.* at 92.

The Supreme Court did not explain what "particular circumstances" was intended to mean.

A case that has been followed in most circuits is *United States v. Schaefer,* 299 F2d 625, 14 ALR3d 1 (7th Cir), *cert den* 370 US 917 (1962). In *Schaefer* the defendant was convicted of using the mails in the employment of a scheme to defraud in the offer and sale of securities. One of the defendant's contentions was that the trial court erred in preventing two defense witnesses from testifying because of their presence in the courtroom after the imposition of a rule requiring sequestration of witnesses. On review, the Court of Appeals interpreted *Holder's* "particular circumstances" language as follows:

> "* * * [W]e interpret *Holder* to mean the court may not disqualify the witness merely because he disobeys the rule but that this alternative is available if particular circumstances are shown. From the better reasoned state court decisions we interpret these particular circumstances to mean some indication the witness was in court with 'the consent, connivance, procurement or knowledge of the appellant or his counsel,' Holstein v. Grier, Tex. Ct.App., 262 S.W.2d 954, 955; see also People v. Tanner, 77 Cal.App.2d 181, 175 P.2d 26, and 6 Wigmore, Evidence § 1842, Supp. at 120. * * *" *Id.* at 631.

We note that *Holder* and *Schaefer* both involved appellate review of lower federal court decisions. Since the cases were decided on nonconstitutional grounds they are not controlling where state procedure is involved.[8] The defendant

---

[8] But when our state processes conflict with a fundamental federal constitutional right the state process must yield. *Washington v. Texas,* 388 US 14, 87 S Ct 1920, 18 L Ed 2d 1019 (1967), made the Sixth Amendment right to compulsory process of

has failed to raise state or federal constitutional questions at trial or at the Court of Appeals and we find no need to address them *sua sponte*.[9] However, we are free to adopt the reasoning of both *Holder* and *Schaefer* if the facts of this case so warrant.

In *Hubbard v. Hubbard,* 7 Or 42 (1879) (cited by the *Holder* court), we ruled that it is error to reject the testimony of a witness on the ground that he was present in the courtroom in violation of an order of the court excluding the witness during the trial, unless it appears that the party calling him was in complicity with him. In *Hanna v. Royce,* 119 Or 450, 249 P 173 (1926), a witness who had testified in plaintiff's case-in-chief remained in the courtroom even though there had been a witness exclusion order by the court. The witness was later called in rebuttal and an objection was made. The trial court allowed the witness to testify and, on review, we held:

> "We think there is a general concurrence of opinion in the courts that, where the violation of the order was not intentional and not procured by a connivance of counsel or from some improper motive, it is discretionary with the court to allow such witnesses to testify or to exclude them from so doing; but, under the circumstances such as appear here, it would have been an abuse of discretion had the court refused to allow them to testify." *Id.* at 459.

In *State v. Kendrick,* 239 Or 512, 398 P2d 471 (1965), the trial court ordered that all witnesses should be excluded from the courtroom while not testifying, as was permitted by former ORS 45.510. A physician who had treated a rape victim remained in the courtroom during opening statements and was later called as a witness. It was apparent from the testimony that the physician had been in the courtroom during the opening statement and the defendant immediately moved for a mistrial, which the court denied. As a sanction, the court

---

witnesses applicable to the states through the Fourteenth Amendment. Therefore, the trial court's conduct of the trial and the procedures employed must comport with the Sixth Amendment and *Washington.*

[9] Linde, J., criticizes the general failure of defense counsel to raise Oregon constitutional issues at the trial court level.

"In my view, a state court should always consider its state constitution before the federal constitution. It owes its state the respect to consider the state constitutional question even when counsel does not raise it, which is most of the time." Linde, *First Things First: Rediscovering the States' Bills of Rights,* 9 U Balt L Rev 379, 383 (1980).

explained the matter to the jury and instructed them to disregard the utterances of the witness which referred to the opening statement of counsel for the state. On review we held:

> "* * * The allowance or denial of a motion for a mistrial under such circumstances is within the discretion of the trial judge and is not to be disturbed by this court unless there is an obvious abuse of discretion, which does not appear here." *Id.* at 518.

We have previously not had occasion to apply OEC 615 to facts similar to the instant case and, consequently, we have found it instructive to look to the federal cases to determine how those courts have dealt with the application of FRE 615 sanctions. In the leading Ninth Circuit case, *United States v. Avila-Macias,* 577 F2d 1384, 1389 (9th Cir 1978), the court held:

> "The appropriate sanction for a violation of a witness exclusionary rule is a matter which lies within the sound discretion of the trial court, *United States v. Oropeza,* 564 F.2d 316, 324 (9th Cir. 1977); *United States v. Torbert,* 496 F.2d 154, 157-8 (9th Cir.), *cert. denied,* 419 U.S. 857, 95 S.Ct.105, 42 L.Ed.2d 91 (1974); *Spindler v. United States,* 336 F.2d 678, 682 (9th Cir.), *cert. denied sub nom. Richards v. United States,* 380 U.S. 909, 85 S.Ct.894, 13 L.Ed.2d 797 (1965). * * *"

Disqualification of a witness for violating an exclusion order, while not the preferred remedy, has been held in some circumstances to be permissible. In a factually similar case to the one at bar, *United States v. Nash,* 649 F2d 369 (5th Cir 1981), defense counsel requested sequestration of witnesses and defendant's wife remained in the courtroom. After the government rested, defense counsel moved to have the wife testify for the purpose of impeaching a government witness who said he did not know the defendant. The wife would have testified that the witness was a friend of the defendant. The court refused the testimony on the ground that the defendant would not be prejudiced by the exclusion since the testimony was not exculpatory. The defendant argued that the testimony was for impeachment (as in this case), however the court relied on *United States v. Willis,* 525 F2d 657 (5th Cir 1976), for authority to exclude the witness. In *Willis,* an FBI agent violated a rule of sequestration when before testifying he was "in and out" of the prosecutor's office a number of times during an

interview between the prosecuting attorney and another agent who had previously testified. The court held:

"* * * Where a witness is alleged to have violated the sequestration rule, it is within the discretion of the trial court to determine whether or not the witness shall testify. * * *" *Id.* at 660.

The court concluded that there was no Sixth Amendment violation of a right to a fair trial or due process violation by allowing the agent to testify. The *Nash* court distinguished *Braswell v. Wainwright,* 463 F2d 1148 (5th Cir 1972), which held that excluding a witness upon no other basis than that he violated a sequestration order cannot be permitted when such denies a criminal defendant a fundamental constitutional right. USCA Const Amend VI. The *Braswell* court held that the arbitrary exclusion of the defendant's sole corroborating witness was a constitutional violation. The circuit court adopted the position taken by Mr. Justice Black, with whom Mr. Justice Douglas and Mr. Justice Brennan joined in dissenting from the denial of certiorari in *Braswell* (Braswell was later granted a writ of habeas corpus, 330 F Supp 281 (SD Fla 1971), and a new trial was ordered:

"While the 'Witness Rule' has a valid purpose and can contribute to the search for the truth, a breach of the rule can not be used to deny a criminal defendant his constitutional right to obtain and present witnesses in his favor. U.S.Const. Amend. VI. Cf. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). A simple rule of courtroom 'fairness' has been misused to destroy a sacred constitutional right." *Braswell v. Wainwright,* 463 F2d at 1157, quoting from *Braswell v. Florida,* 400 US 873, 91 S Ct 106, 27 L Ed 2d 111 (1970).

In *United States v. Johnston,* 578 F2d 1352 (10th Cir), *cert den* 439 US 931 (1978), the court cited *Holder* for authority to allow the testimony of a witness who violated a sequestration order by stating:

"* * * We cannot say that the circumvention of the rule has so discredited the witness as to render his testimony incredible as a matter of law." *Id.* at 1356.

In *United States v. Smith,* 578 F2d 1227 (8th Cir 1978), the court allowed police rebuttal testimony despite the

fact that after the sequestration order was granted notes were taken throughout the trial and relayed to the witness.

> "* * * [E]ven if there had been a violation of the sequestration order, it is well established that the witness is not necessarily disqualified and that the witness may instead be proceeded against for contempt. *Holder v. United States,* 159 U.S. 91, 92, 14 S.Ct. 10, 37 91 L.Ed. 1010 (1893); *United States v. Atkins,* 487 F.2d 257, 259 (8th Cir. 1973). * * *" *Id.* at 1235.

As to the application of OEC 615 to this case, we hold that a violation of an exclusion order is not, of itself, sufficient to disqualify a defense witness in a criminal case, and that the trial court cannot exclude the testimony based upon this ground alone. *See* 14 ALR3d § 5 and cases cited therein. We adopt the reasoning of *United States v. Schaefer, supra,* and hold that exclusion of a witness in a criminal case is too grave a sanction where the violation of the order was not intentional and not procured by a connivance of counsel or for some improper motive. We think this represents a practical and sensitive accommodation between a criminal defendant's right to present witnesses in his behalf and the court's need to control the trial proceedings.[10]

Refusal to allow defense witnesses to testify for violation of an exclusion order should be imposed only when necessary to preserve the "integrity of the fact-finding process" and requires that the competing interests be closely examined. *Berger v. California,* 393 US 314, 315, 89 S Ct 540, 21 L Ed 2d 508 (1969) (discussing the right to confront and cross-examine witnesses).

The reasoning for our holding was well said by the Washington Supreme Court in *Castleman v. Schiffner,* 160 Wash 313, 318, 294 P 983 (1931), where the court held:

> "It has been stated as a general rule, in substance, that the matter of receiving the testimony of a witness who has violated an exclusion rule is within the discretion of the trial

---

[10] Notwithstanding the provisions of OEC 615, we note that a trial court has the statutory power to control the court's proceedings under ORS 1.010(5), which reads:

"Every court of justice has power:

"* * * * *

"(5) To control, in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto."

court. This general statement, however, we think, must be applied with great caution when the enforcement of an exclusion rule has the effect of excluding material testimony. When the testimony is admitted by the trial court, there is usually but little room for ever saying there is an abuse of discretion on the part of the trial court; but when the strict enforcement of an exclusion rule has the effect of excluding material evidence, such a ruling of a trial court, we think, is subject to critical inquiry by the appellate court."

The witness in the instant case was being called to impeach the testimony of the operative. The particular testimony to be impeached dealt with a telephone number which had not been previously provided to the defense and, therefore, it could not have been anticipated that it would become necessary to call this impeachment witness.

We do not find that the "particular circumstances" alluded to in *Holder* as defined by *Schaefer* occurred in this case. The witness was not violating an exclusion order[11] of the court with the "knowledge, procurement, or consent" of the defendant or his counsel. *Braswell v. Wainwright,* 463 F2d 1148 (5th Cir 1972).

We conclude that the exclusion of the witness's testimony as a sanction for a violation of the "stipulation" or OEC 615 was legally impermissible.

Reversed and remanded.

---

[11] We recognize that the court had not issued an exclusion order in this case. Even if there had been a violation of a court order issued under OEC 615, we believe that the trial court is obligated to review its sanction options in an escalating manner, first considering whether contempt is a sufficient sanction, or proceeding by instructing the jury as to the witness's violation of the order or, ultimately, the preclusion sanction.