Argued and submitted April 5, 1991, conviction for hit and run reversed and remanded for new trial; otherwise affirmed June 24, 1992

## STATE OF OREGON,
*Respondent,*

*v.*

## JAMES LELAND PARKER,
*Appellant.*

### (PO46278; CA A64548)

835 P2d 918

John Henry Hingson III, Oregon City, argued the cause and submitted the brief for appellant.

Harrison Latto, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

In a jury trial, defendant was convicted of DUII, ORS 813.010, and failure to perform the duties of a driver when property is damaged (hit and run). ORS 811.700. On appeal, we affirm the conviction for DUII but reverse the conviction for hit and run.

■ Defendant raises seven assignments of error. The first deals with the trial court's denial of his motion to suppress, on which the court made minimal findings of fact. If findings are not made on all pertinent historical facts and there is evidence from which those facts could be decided more than one way, we will presume that the trial court found the facts consistently with its ultimate conclusion. *State v. Carlson*, 311 Or 201, 214, 808 P2d 1002 (1991); *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Consequently, the facts that we state include both those that the trial court found expressly and additional pertinent facts in the record that are consistent with its conclusion.

At approximately 10 p.m. on March 15, 1989, a citizen heard a crash and found defendant seated behind the wheel of a demolished pickup truck that had hit the rear end of an unoccupied semitrailer. The citizen testified that, although defendant appeared "drowsy or something," he did not smell of alcohol. He declined the citizen's offer of aid and, after making a call at a pay phone, left the scene.

When the police arrived, the citizen told them what he had seen and that, although he had smelled no alcohol, defendant's behavior and the fact that he had hit a very large, parked semitrailer led the citizen to believe that defendant was intoxicated. The police called in a police dog tracking unit to search for defendant, but it was unsuccessful. After four hours of searching, three police officers went to defendant's home and spoke with defendant's wife and son. His son told police that he had taken defendant to his place of business. When defendant had been unable to enter the business, his son had taken him to the home of his business partner, Lines, to get the keys.

Lines arrived at the business with the keys to the building at 3 a.m., five hours after the accident. Although he initially told the police that defendant was not in the building

and that Lines was there to work on equipment, he later admitted that defendant was in the building. Because Lines did not have the keys to the gate surrounding the building, a discussion followed, during which, according to an officer's testimony, Lines consented to the police cutting the padlock on the gate. Lines testified that, although he gave his consent, he did so only after he had told the officers to contact the building's owners for permission and the police had told him that they would cut the lock regardless of his consent.

After the padlock was cut, Lines gave the officers the keys to the building, and they entered with a police dog. Lines testified that he consented to the entry only because he did not want anyone to get bitten by the dog. The officers who found defendant in the building testified that they smelled alcohol on him. After defendant admitted drinking, driving and leaving the scene of an accident, he was arrested. More than five hours after the accident, he registered .07 on an Intoxilyzer.

██ Defendant argues that the trial court erred in denying his motion to suppress the evidence found in the warrantless search of the business premises, because the state failed to prove by "clear and convincing evidence" that Lines' consent to search was voluntary. *State v. Kennedy*, 290 Or 493, 502, 624 P2d 99 (1981). However, the standard for proving the voluntariness of consent to search is by a "preponderance of the evidence." ORS 133.693(4);[1] *see also State v. Stevens*, 311 Or 119, 136-37, 806 P2d 92 (1991).[2] The standard for determining the validity of third party consent is the same as for direct consent. *See City of Portland v. Paulson*, 98 Or App 328, 330, 779 P2d 188 (1989). Accordingly, on review, we determine whether the trial court's conclusion that Lines' consent was given voluntarily is supported by a preponderance of the evidence.

---

[1] ORS 133.693(4) provides:

"Where the motion to suppress challenges evidence seized as the result of a warrantless search, the burden of proving by a preponderance of the evidence the validity of the search is on the prosecution."

[2] Because the trial court held the state to a higher burden of proof than a preponderance of the evidence, before finding facts in the state's favor, we need not remand for reconsideration. *State v. Stevens, supra,* 311 Or at 137 n 10.

■    According to defendant, the police created a coercive atmosphere in which Lines had no choice but to consent to the search. He points to the circumstances that it was night and that several armed police officers and a police dog were present. He also points to the testimony that Lines allowed the police to cut the padlock on the gate only because the police said that they would do so regardless of his consent and that Lines consented to the entry of the building only because he did not want anyone to get bitten by the dog.

We have said that, "[a]lthough there may be elements of coercion in every police-citizen encounter, not every coercive factor inducing consent to search is constitutionally impermissible." *State v. Jacobus*, 106 Or App 496, 500, 809 P2d 108 (1991). Lines was not under arrest or the subject of an investigation. When he admitted that he had lied to the police about defendant's whereabouts and the reason for his own presence at the business, the admissions were voluntary. Given the trial court's conclusion, we presume that it did not believe Lines when he said that the officer had said that he would cut the padlock with or without consent. The factfinder was entitled to believe or disbelieve the evidence, even though it was uncontroverted. *State v. Palaia*, 289 Or 463, 475, 614 P2d 1120 (1980); *State v. Fox*, 109 Or App 53, 818 P2d 942 (1991), *mod* 111 Or App 362, 366, 826 P2d 89 (1992). Therefore, there was no unlawful threat that might have made Lines' consent involuntary. *See State v. Walton*, 311 Or 223, 237-38, 809 P2d 81 (1991). The dog's mere presence was not a sufficient indicium of constitutionally impermissible coercion so as to render Lines' consent invalid.[3] We hold that the trial court did not err in concluding that Lines' consent to the entry by the police of both the fenced portion of the business premises and the building was voluntary.

■■    Defendant's second, third and fourth assignments of error challenge the denial of his motion for a continuance. He

---

[3] Defendant also argues that the police failed to advise Lines of his right to refuse to consent to the search because, after they had entered the business premises, Lines asked the officers, "Don't you need a warrant for something like this?" The failure to inform a person of his right to refuse consent does not, by itself, invalidate the consent. *See State v. Flores*, 280 Or 273, 276-79, 570 P2d 965 (1977). Lines' question, which came *after* the police had already obtained his voluntary consent to search the premises, does not indicate an intention to withdraw his consent.

asserts that he had not planned to call an expert to testify that his earlier *inhalation of acetone* — which he had used to clean his motor home — had caused an abnormally high Intoxilyzer test result, *unless* the state intended to call an expert about the dissipation rate of alcohol from the bloodstream over time. He contends that, because the state did not notify the defense that it would call its expert until one year after the case was filed and just two weeks before trial, he was unable to obtain an expert to appear in person by the time of trial. Instead of granting his motion for a continuance, the court allowed a defense expert to testify by telephone during the trial. Defendant argues that he was prejudiced by the prosecution's alleged discovery violation.

We agree with defendant that the prosecution's delay in notification constituted a discovery violation. The district attorney must disclose to a defendant "[t]he names and addresses of persons whom the district attorney intends to call as witnesses at any [stage] of the trial," ORS 135.815(1), "as soon as practicable following * * * the filing of a complaint charging a misdemeanor." ORS 135.845(1). The state does not offer any reason why it could not have given the notification earlier. *See generally State v. Girard*, 106 Or App 463, 467-68, 808 P2d 1017 (1991). In addition, as the trial judge acknowledged, it is "fairly unusual for the State to be calling an expert for this purpose." There was, therefore, no reason why defendant should have known that he would need an opposing expert until he was notified by the state.

7.      However, the crucial question is whether defendant's expert witness was, in fact, precluded from testifying as a result of the prosecution's discovery violation, so that defendant was prejudiced. *See State v. Girard, supra,* 106 Or App at 468.[4] Defendant argues that there was actual prejudice, because he was "forced" to call an expert other than of

---

[4] *State v. Burdge*, 295 Or 1, 664 P2d 1076 (1983), and *State v. Mai*, 294 Or 269, 656 P2d 315 (1982), are often cited as authority in cases involving the failure to disclose witnesses. In *Mai*, the Supreme Court explained that defense witnesses are not to be excluded unless the prosecution shows that it has been prejudiced by the failure to disclose them. However, a defendant need not show prejudice from a discovery violation by the prosecution before exclusion of prosecution witnesses is an appropriate sanction. 294 Or at 280 n 7. In *Burdge,* the court reaffirmed the rule in *Mai* but distinguished that case, because *Burdge* involved a different type of witness and testimony. The court held that because, as a result of surprise testimony, it became necessary for the defendant to secure an impeachment witness, failure to

his choosing and to receive the testimony by telephone. The taking of testimony by telephone over the objection of a party violates ORS 45.010 and ORS 45.050,[5] *State ex rel Juv. Dept. v. Gates*, 86 Or App 631, 634, 740 P2d 217 (1987), *rev den* 305 Or 45 (1988), but we have held that, if a party fails to challenge the means of taking testimony, any objection is waived. *State ex rel Juv. Dept. v. Stevens*, 100 Or App 481, 487 n 2, 786 P2d 1296, *rev den* 310 Or 71 (1990). Even the inappropriate admission of telephonic testimony is not a ground for a reversal, if a party waived the error by failing to object properly. Defendant asked the court to accommodate him by allowing an expert to testify by telephone.

Although he may have been "forced" by circumstance to choose between having an expert testify by telephone or having none at all, he did not object on that basis. He did have the testimony of an expert. Accordingly, we cannot say that the trial court abused its discretion in denying defendant's motion for a continuance and in allowing the defense expert to testify by telephone.

Defendant also argues that another discovery violation should have led to the exclusion of the state's expert's

disclose the witness earlier was not a discovery violation and, therefore, the trial court erred in excluding the witness on that ground.

Both *Mai* and *Burdge* involved the propriety of the exclusion of a party's witness *as a sanction for that party's own discovery violation*. In contrast, this case involves defendant's argument that he was prejudiced because the witness of his choice was excluded *as a result of the other party's discovery violation*. The leading authority on that issue is *State v. Girard, supra*, in which we held that the prosecution had been prejudiced by the defendant's failure to disclose a witness, because the prosecution was unable to obtain an expert witness in response. We cite *Girard* only as authority that defendant was not prejudiced by the prosecution's discovery violation, because his witness was not, in fact, excluded. Defendant was able to obtain an expert witness who, at defendant's own suggestion, was permitted to testify by telephone.

[5] Taking testimony is governed by ORS 45.010:

"The testimony of a witness is taken by three modes:

"(1) Affidavit.

"(2) Deposition.

"(3) Oral examination."

ORS 45.040 provides:

"An oral examination is an examination *in the presence of the jury or tribunal* which is to decide the fact, or act upon it, the testimony being heard by the jury or tribunal from the mouth of the witness." (Emphasis supplied.)

testimony. We review the ruling for abuse of discretion. *State v. Gray*, 101 Or App 421, 424, 790 P2d 1203, *rev den* 310 Or 205 (1990). When the state's expert was called to testify about the dissipation rate of alcohol in the bloodstream, he said that he had made some notes while reviewing the police report. Defendant moved to exclude the testimony on the ground that the state had not disclosed the notes, which defendant characterizes as "results of scientific tests," as required by ORS 135.815.[6] Under the statute, results of scientific tests must be disclosed, but only if "the district attorney intends to offer [them] in evidence at the trial." Given defendant's characterization of the notes as "results of scientific tests," they were not discoverable, because the expert did not refer to them during his testimony, they were not offered in evidence and there is no indication in this record that the district attorney ever intended to offer them in evidence. Moreover, defendant failed to question the expert to determine whether the notes were anything more than a summary of the police report. Accordingly, it was not a discovery violation.

■    Next, defendant argues that the trial court abused its discretion in denying his motion for a mistrial. The inquiry on appeal is whether the verdict would have been substantially influenced by improper prejudicial material. *State v. Jordan*, 79 Or App 682, 686, 719 P2d 1327, *rev den* 301 Or 667 (1986). During the search for defendant, an officer questioned his son regarding his whereabouts. The officer testified that he thought that the son was not being truthful with him at first. The trial court sustained defendant's objection to that line of questioning, instructed the jury to disregard it and denied defendant's motion for a mistrial. Defendant argues that a cautionary instruction that the trial court gave was inadequate to correct the prejudicial testimony, because a witness is not permitted to express an opinion regarding the

---

[6] ORS 135.815 provides, in part:

"[T]he district attorney shall disclose to the defendant the following material and information within the possession or control of the district attorney:

"* * * * *

"(3) Any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of *scientific tests*, experiments or comparisons *which the district attorney intends to offer in evidence at the trial*." (Emphasis supplied.)

credibility of another witness. *State v. Isom*, 306 Or 587, 591-92, 761 P2d 524 (1988).

However, defendant's son was not a witness in this case. Opinion evidence of this type is precluded only when one *trial witness* testifies about whether another *trial witness* is telling the truth. *State v. Odoms*, 313 Or 76, 82, 829 P2d 690 (1992); *State v. Middleton*, 294 Or 427, 657 P2d 1215 (1983). The worst that can be said about the officer's testimony that the son had been initially untruthful is that it was irrelevant, because the son did eventually tell the police that he had taken defendant to his place of business. The testimony was inadmissible, and the trial court properly sustained defendant's objection and gave a curative instruction to attempt to avoid prejudice. The court did not abuse its discretion in denying defendant's motion for a mistrial.

■ Finally, defendant argues that the trial court improperly granted the state's motion to consolidate the DUII and hit and run charges on the day of trial and that, therefore, *one* of his convictions should be reversed. The state concedes that, under *State v. Shields*, 280 Or 471, 478, 571 P2d 892 (1977), the consolidation motion was untimely. However, it contends that defendant is not entitled to reversal of either of his convictions, because he did not show that he was prejudiced in his defense of either charge by the introduction of evidence concerning the other.

*Shields* does not require a defendant to show prejudice from consolidation other than the untimeliness of the motion itself. When the prosecution offers no reasonable excuse for failing to move for consolidation earlier, a defendant should not be forced to go to trial unprepared on additional charges. Although defendant does not indicate which of the charges was improperly tried, the record indicates that both parties considered the DUII charge to be the predicate offense. In addition, the judgment shows a sentence of two days in jail, a fine and an assessment for victim's assistance in the column marked "DUII" only. Apparently, the court intended the sentence on the DUII conviction to encompass the hit and run conviction also. Because we hold that the trial court erred in granting the state's untimely motion to

consolidate the charges, we reverse defendant's conviction for hit and run.

Conviction for hit and run reversed and remanded for a new trial; otherwise affirmed.