2004 WY 74

**In the Interest of KC, a minor,
Appellant (Defendant),**

**v.**

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. C–03–11.**

Supreme Court of Wyoming.

June 28, 2004.

Representing Appellant: Harry G. Bondi of Harry G. Bondi Law Offices, P.C., Casper, WY. Argument by Mr. Bondi.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; and D. Michael Pauling, Senior Assistant Attorney General. Argument by Mr. Pauling.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] After trial before the juvenile court, KC, a minor, was adjudicated a juvenile delinquent. KC appeals that determination, raising procedural errors. Upon our review, we reverse and remand.

### ISSUES

[¶ 2] A summary of the issues presented by the parties is as follows:

1. Did the court abuse its discretion when it prohibited two of KC's proposed witnesses from testifying for violating its sequestration order?

2. Did reversible error occur because the prosecutor failed to provide KC with a copy of the tape-recorded police interview with the alleged victim?

### FACTS

[¶ 3] On October 8, 2002, a juvenile petition was filed alleging that KC was a juvenile delinquent. The petition stemmed from allegations that KC subjected a female minor to sexual contact in violation of Wyo. Stat. Ann. § 6-2-313 (LexisNexis 2003) and immodest, immoral, or indecent liberties in violation of Wyo. Stat. Ann. § 14-3-105 (LexisNexis 2003). An affidavit of Casper Police Detective Scott Jones supporting the petition was also filed on that date. In his affidavit Detective Jones stated that he interviewed the alleged victim in the presence of her grandmother concerning the incident and that this interview was tape recorded. The affidavit also detailed that the alleged victim had advised Detective Jones that on October 3, 2002, while KC and the victim were attending high school, KC touched her inappropriately, and caused the victim to touch him inappropriately. That same day, KC's counsel filed a joint entry of appearance and motion for discovery. Trial was subsequently scheduled for February 20, 2003.

[¶ 4] Just before trial was to commence, and also during the middle of trial, KC's counsel requested relief from the court because the State had failed to produce the taped statement. The court denied this relief because the court found the motion untimely and, based on the State's representation that the tape had been lost, it would be impossible for the court to order its production. The court further ruled that even if the tape were available, it would not be allowed into evidence.

[¶ 5] During trial, the alleged victim's testimony varied only slightly from what Officer Jones had reported the alleged victim originally advised him during the taped interview. Officer Jones was not called to testify during the trial, neither were two other students that reportedly witnessed the incident.

[¶ 6] KC intended to call four minor witnesses, all students who had supposedly heard the alleged victim state on two separate occasions that the incident did not happen.[1] KC called witness # 1, and she briefly began to testify she had heard the alleged victim speak about the incident with KC. However, before witness # 1 could finish testifying, it was determined that the alleged victim was required to testify further. While an attempt to locate the alleged victim was being made, witness # 1 spoke with witness # 2. Thereafter, the court refused to hear the testimony of witness # 1 and witness # 2, ruling that witness # 1 had violated the court's oral order regarding witnesses by speaking with witness # 2. Later, in explaining this ruling, the court reasoned that the testimony of witness # 1 and witness # 2 would be of no assistance to the court because the court found that the testimony would duplicate that offered by witness # 3 and would be of no help to KC. The court further concluded that the testimony would be immaterial to its determination because the victim's statements were made in response to, and in an atmosphere of, intimidation.[2]

---

1. Because KC's intended witnesses were all minors and we desire to keep their anonymity, as well as for purposes of clarity in this opinion, we will simply refer to these witnesses by numerical order.

2. The alleged victim testified that both witness # 1 and witness # 2 as well as others confronted her about the incident with KC.

[¶ 7] During the trial, witness # 3 was allowed to testify that when she confronted the alleged victim and used profane language, the alleged victim denied that she had made any statements about KC. Witness # 4 confirmed that this conversation occurred. Finally, KC testified that he was in the room before the alleged victim and that the incident simply did not occur. KC further indicated that he believed that the alleged victim had made up the incident in order to seek revenge for an apparent altercation that had previously occurred between KC and a friend of the alleged victim.

[¶ 8] Upon conclusion of the trial, the court held that there were insufficient facts to support the immodest, immoral, or indecent liberties allegation, but that the evidence supported the allegation that KC committed an improper sexual touching of the victim. On March 3, 2003, KC filed a Combined Motion for New Trial, Renewed Motion to Dismiss for Failure to Provide Crucial Evidence to the Minor Child, Renewed Motion for Judgment of Acquittal, and Motion for New Trial Based on Court's Refusal to Admit the Testimony of the Minor Child's Witnesses, [witness # 1 and witness # 2]. This combined motion was apparently denied. On April 21, 2003, KC filed another separate motion for production of the interview tape; this motion was also denied. The court ultimately adjudicated KC a juvenile delinquent. This appeal followed.

### STANDARD OF REVIEW

[¶ 9] We stated in *Cook v. State*, 7 P.3d 53, 58–59 (Wyo.2000):

Violations of sequestration orders, and the sanctions therefor, are left to the sound discretion of the trial court, and we will reverse only if that discretion is abused. *Madrid v. State*, 910 P.2d 1340, 1345 (Wyo.1996). A search for an abuse of discretion calls upon this court "to determine whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious." *Vaughn v. State*, 962 P.2d 149, 152 (Wyo.1998).

### DISCUSSION

#### Prohibition of Witness Testimony

[¶ 10] KC contends that the court abused its discretion when it prohibited two of his proposed witnesses, witness # 1 and witness # 2, from testifying for violating the court's oral order. KC complains that the court's ruling prohibited him from presenting a full defense and, therefore, resulted in an unfair trial. We agree.

[¶ 11] We addressed a very similar argument in *Towner v. State*, 685 P.2d 45, 47–49 (Wyo.1984) (footnotes omitted):

The question presented to us is whether the trial court erred in excluding the defense witnesses' testimony due to their apparent violation of the sequestration order. Rule 615, W.R.E., provides for exclusion of witnesses. Under this rule, sequestration of witnesses is a matter of right for either party. The purpose is to prevent the tailoring of evidence to conform to prior testimony and to assist the parties in detecting falsehoods and testimony which is less than candid. *United States v. Ell*, 718 F.2d 291 (9th Cir.1983); *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); 3 Louisell & Mueller § 370 (1979). Although Rule 615, W.R.E., does not provide for sanctions for violations of the rule, the most often invoked remedies are (1) to hold the witness in contempt; (2) to make the violation a subject for cross-examination and comment; and (3) to disallow the testimony altogether. 3 Louisell & Mueller § 371; 13 Land & Water L.Rev. 909 (1978), "Article VI of the Wyoming Rules of Evidence: Witnesses."

The United States Supreme Court held in *Holder v. United States*, 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893):

"If a witness disobeys the order of withdrawal, while he may be proceeded against for contempt, and his testimony is open to comment to the jury by reason of his conduct, he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground, merely, although the right to exclude under particular circumstances

may be supported as within the sound discretion of the trial court." 14 S.Ct. at 10.

We have previously addressed this question in circumstances where the judge allowed witnesses to testify although they had been in the courtroom in violation of a sequestration order. We affirmed the allowance of that testimony, stating that permitting witnesses to testify was a matter addressed to the discretion of the court and that we would reverse only for gross abuse of that discretion. *Whiteley v. State*, Wyo., 418 P.2d 164 (1966); *Pixley v. State*, Wyo., 406 P.2d 662 (1965). We have not, however, addressed the question of the propriety of excluding testimony because of a violation of a sequestration order.

The general rule is that a party who does not know of nor procures the violation should not be deprived of essential testimony. 88 C.J.S. Trial § 70. However, when a party knows that a witness is violating the rule and allows the violation to continue, he may lose the right to present the witness or to object on those grounds. 23 C.J.S. Criminal Law § 1013.

"A party should not be denied his witness because of misconduct which the party has not caused. 'Refusal to permit a witness to testify in a criminal case on the ground that he had violated the order excluding witnesses is reversible error where neither the state nor the defendant was responsible for the violation of the order and did not know he was present.' Excluding testimony is not an appropriate remedy. Rather, the jury should be instructed on the credibility of the witness. If the order is willfully violated, the court may properly hold the witness in contempt of court." (Citations omitted.) *State v. Wells*, Mont., [202 Mont. 337] 658 P.2d 381 (1983).

Exclusion of the witness' testimony is too grave a sanction where the violation was not intentional and was not procured by the connivance of the party or his counsel. A practical and sensitive accommodation between the defendant's right to pres-

ent a defense and the trial court's need to control the proceedings must be maintained. Exclusion should be allowed only when it is necessary to preserve the integrity of the fact finding process. *State v. Burdge*, 295 Or. 1, 664 P.2d 1076 (1983).

*United States v. Schaefer*, 299 F.2d 625, 631, 14 A.L.R.3d 1 (7th Cir.1962), held that exclusion of testimony was too harsh in situations where the witness did not willfully violate the sequestration order and there was no indiction that the witness was in court with

" 'the consent, connivance, procurement or knowledge of the appellant or his counsel.' ... [D]isqualification of the offending witness absent particular circumstances is too harsh a penalty on the innocent litigant." See also, *United States v. Johnston*, 578 F.2d 1352 (10th Cir.1978), cert. denied 439 U.S. 931, 99 S.Ct. 321, 58 L.Ed.2d 325.

*Braswell v. Wainwright*, 463 F.2d 1148 (5th Cir.1972), found error in excluding testimony because of a sequestration violation on grounds of Sixth Amendment rights and due process, stating that the defendant's right to obtain witnesses in his behalf was violated. Since neither the defendant nor his counsel was involved in the violation, there could not have been a waiver of a constitutional right which would render the exclusion proper. Testimony was considered properly excluded when the court found connivance of the government's counsel and prejudice to the defendant, *United States v. Blasco*, 702 F.2d 1315 (11th Cir.1983), and where a defendant violated the sequestration order by comparing testimony with another witness. *United States v. Torbert*, 496 F.2d 154 (9th Cir.1974), cert. denied 419 U.S. 857, 95 S.Ct. 105, 42 L.Ed.2d 91.

*United States v. Gibson*, 675 F.2d 825 (6th Cir.1982), cert. denied 459 U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285, stated that most authorities agree that the "particular circumstances" of *Holder v. United States, supra*, sufficient for exclusion are indications that the witness violated the order with the consent, connivance, procurement or knowledge of the party seeking the

testimony. This case held there was no abuse of discretion in excluding testimony because the witness stayed in the courtroom with the knowledge of the defendant and another witness gave substantially identical testimony. Excluding two witnesses for a violation was held not to deprive the defendant of his right to obtain witnesses in his behalf where three other witnesses testified to the same facts and the defendant and his counsel knew of their presence in the courtroom. *Calloway v. Blackburn*, 612 F.2d 201 (5th Cir. 1980).

[¶ 12] Here, just as in *Towner*, there was no evidence presented nor was it claimed that one witness spoke to the other witness with the knowledge or consent of KC or his counsel. In addition, a review of the record discloses that reasonable confusion remained on the part of KC and his counsel regarding the extent of the oral order entered by the court.

[¶ 13] When entering the order, the court simply stated:

> I'll go ahead and state for the record that we have entered an order of sequestration under Wyoming statute allowing only parents and the alleged victim, the alleged defendant and his parents, and counsel present in the courtroom.

Later, KC's counsel somewhat understandably indicated that he believed the order merely excluded the witnesses from the courtroom, as is required in juvenile proceedings in Wyoming, and that the order did not prohibit the witnesses from speaking to one another about what had occurred in court. KC's counsel correctly reminded the court that it had not given any instruction to the parties or their respective counsel to advise their witnesses not to discuss their testimony with others. Moreover, although a sign was posted on the courtroom door explaining that the pending matter was a confidential closed juvenile action, it only indicated that no one was allowed to enter. In fact, the court

admitted that it had entered an oral exclusionary order and did not enter a separate sequestration order, but it believed that the purpose of the exclusionary order was also to sequester the witnesses.

[¶ 14] We certainly identify with the court's frustration when faced with the prospect that the confidentiality of the juvenile proceeding had been compromised.[3] We further support the court's concerns that if witnesses are allowed to speak to others about what occurred when they are before a juvenile court, the required sanctity and confidentiality of a juvenile proceeding would be quickly eroded. However, we cannot agree that the appropriate remedy in this instance was the exclusion of the witnesses' testimony. The result of such a sanction was that KC was unable to fully present a defense to the criminal allegations made against him when he played no part in the violation of the court's order. We, therefore, hold that the court abused its discretion by excluding the witnesses as a sanction for violating the court's oral order.

[¶ 15] We further do not agree with the court's characterization that the testimony of witness # 1 and witness # 2 would be of no assistance to the court because the court found the testimony would duplicate that offered by witness # 3 and would be of no help to KC. KC's counsel informed the court during trial that witness # 1 and witness # 2 were prepared to testify about a separate and distinct incident than that addressed by witness # 3. Therefore, it was unreasonable for the court to conclude that the testimony of witness # 1 and witness # 2 would be cumulative.

[¶ 16] The State argues that the court's perspective permitted the court to reasonably conclude that the proposed testimony of witness # 1 and witness # 2, even if accepted as true, would be viewed as having limited, if any, impeachment value. In particular, the State asserts that the alleged victim's later denial of her accusations against KC could also be explained as an effort to avoid an

---

3. Although the court questioned numerous witnesses regarding the statements of witness # 1 to witness # 2, it was never ascertained if witness # 1 discussed her testimony with witness # 2 or simply indicated that the alleged victim was

needed in order to give further testimony and was not immediately present to do so. Witness # 1 further indicated that she was not aware that she could not speak to anyone about her testimony in court.

uncomfortable situation, rather than untruthfulness on the alleged victim's part, given the intimidating and confrontational nature of witness # 1 and witness # 2 when they interacted with the alleged victim. While the alleged victim clearly testified about the confrontation, we believe it a better practice for the court to elicit testimony from all concerned before making any ultimate conclusions or characterizations, particularly in a criminal action. It appears, moreover, that this procedure would have been particularly appropriate because KC's sole defense was his insistence that the incident simply never occurred. Such a practice is obviously preferred because it allows the court to consider the differing perspectives of the witnesses. Allowing all those concerned to testify further permits the defendant to fully present a defense to the charges levied against him as constitutionally mandated. In addition, a full and complete record may then be developed if this court is later required to address any issues on appeal.

[¶ 17] We also are not persuaded by the State's argument that *Towner* is distinguishable from the instant case because the *Towner* matter involved a jury and this action was tried before the court. Obviously the presence of a jury requires the court to consider how the jury might be affected by any court ruling excluding testimony or later explanatory jury instructions, if testimony is allowed. However, such concerns are nonexistent when a matter is tried before the court. When a matter is presented only to a judge with experience in assessing the credibility of witnesses and weighing of evidence, there would appear no reason not to allow the proffered witnesses to testify and provide the criminal defendant every opportunity to fully present a defense to the allegations asserted.[4]

4. In hindsight, this case also points out the necessity for a court to give explicit instructions to the parties and their counsel concerning both the exclusionary and sequestration elements that apply to parties, counsel, and witnesses in juvenile proceedings.

5. Our holding concerning the exclusion of witnesses by the court is dispositive; however, because we remand this matter, presumably for new trial, we choose to address this issue.

### Non–Production of Investigatory Tape

[¶ 18] KC also argues that his rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the Sixth and Tenth Sections of Article 1 of the Wyoming Constitution were violated as a result of the court denying him access to the alleged victim's tape-recorded statement. We do not agree.[5]

[¶ 19] As pointed out by the State, the case of *Hensley v. State*, 2002 WY 96, ¶¶ 14–15, 48 P.3d 1099, ¶¶ 14–15 (Wyo.2002), sets forth that when advancing a *Brady*[6] claim, a defendant is required to establish three things: 1) that the loss or destruction of the evidence occurred because of the calculated, bad faith effort of authorities to deny the defendant exculpatory evidence, rather than through accident or negligence or as a normal course of handling such evidence; 2) the evidence was constitutionally material[7] and its exculpatory value was apparent to authorities prior to its loss or destruction; and 3) the defendant had no reasonably available alternative means of obtaining comparable evidence or otherwise demonstrating his innocence. *See also Young v. State*, 849 P.2d 754, 763–64 (Wyo.1993). The record evidences that KC failed to show any of the required elements.

[¶ 20] Initially, KC was unable to establish that the investigatory tape was lost or destroyed because of the calculated, bad faith effort of authorities with the intent to deny him the tape. Rather, all that was established was that Detective Jones was unable to locate the investigatory tape for production. Further, while it is true that the alleged victim testified at minor variance with what Officer Jones had reported, KC was unable to establish that this evidence was constitutionally material and that its exculpatory val-

6. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

7. Evidence is considered "constitutionally material" only if there is a reasonable probability that, had the evidence been made available to the defendant, the result of the trial would have been different. *Relish v. State*, 860 P.2d 455, 460 (Wyo.1993).

ue was apparent to authorities prior to its loss or destruction. Finally, KC had a reasonably available alternative means of obtaining comparable evidence or otherwise demonstrating his innocence. For instance, KC could have subpoenaed Detective Jones and required him to testify.

[¶ 21] KC's solitary defense was his assertion that the events did not occur as averred between the alleged victim and himself. KC chose to testify on his own behalf. Likewise, KC called upon witness # 3 and witness # 4 to testify and attempted to call witness # 1 and witness # 2. KC could have performed his own investigation, located the other persons who were in the room during the alleged incident, and required their testimony at trial through subpoena. Therefore, it is clear that KC had a reasonably available alternative means of obtaining comparable evidence or otherwise demonstrating his innocence.

[¶ 22] Hence, we hold that the court acted properly when it denied KC's requested relief and ruled that the tape would not be allowed into evidence. Further, we agree with the court that KC's requested relief was untimely, as counsel for KC waited until just before trial was to begin to bring this issue to the court's attention. The court appropriately admonished KC's counsel that such important matters should have been formally brought before the court well in advance of the trial date.

## CONCLUSION

[¶ 23] For the foregoing reasons, we reverse the adjudication of KC as a juvenile delinquent and remand this matter for further proceedings that are consistent with this opinion.